PATRICK SMITH AND JOHN J. THOMAS, TRUSTEES, FOR THE USE AND BENEFIT OF THE ANCIENT ORDER OF FORESTERS, v. THOMAS PINNEY.

*Voluntary associations—Action—Parties—Pleading.*

1. The *main* question in this case is whether, under the general laws governing the Ancient Order of Foresters, the trustees for the subsidiary high court are authorized to maintain an action for money claimed to be in an ex-treasurer's hands, without showing his refusal to pay over the same on presentation to him of an order therefor pursuant to the laws of the society; which question is decided in the negative, the only evidence of a refusal to pay pursuant to *any* authority being his refusal to make such payment to the secretary of the subsidiary high court, who demanded such payment pursuant to a resolution of the executive council, but presented no order as required by the laws of the society, and the evidence failing to show that the subsidiary high court authorized the bringing of such suit.

2. The appellate court will regard an amendment to a declaration as having been made after judgment which might have been made before on motion, under the authority of How. Stat. § 7636.

So *held*, where the trustees of an unincorporated benevolent society, in a suit against the treasurer intended to be brought in their representative capacity, inserted in a common-count declaration after their names the words, "trustees, for the use and benefit of" the society, naming it, and in the several counts the promises of the defendant were averred to have been made to plaintiffs. Error was assigned upon the refusal of the court to exclude all of the plaintiffs' testimony on the ground that the added words were merely descriptive, and that the suit was therefore prosecuted in plaintiffs' individual capacity; which assignment is held untenable, the objection being one which could have been obviated by amendment by inserting the word "as" before the word "trustees," and by corresponding amendments in the counts of the declaration.

3. No member or number of members of an unincorporated society can maintain a suit for its benefit to enforce a contract made in its name or for its benefit, or for property belonging to the society, unless there is some warrant or authority for such action on their part in the organization of the society, and the terms and conditions of the agreement by which its members are united.

Error to Wayne. (Hosmer, J.) Argued February 3, 1891. Decided July 28, 1891.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*George W. Radford,* for appellant, contended:

1. The use of the phrase "for the use and benefit of" some person named, other than the plaintiff, in the commencement of a declaration, immediately following the name of the plaintiff, where no assignment is set forth, and no allusion made in the body of the declaration to any other interest or title than such as plaintiff held, has no force to make the issue different than if the phrase had been omitted; citing *Insurance Co. v. Manufacturing Co.,* 31 Mich. 346; *Stobie v. Dills,* 62 Ill. 432.

2. Parties suing in a representative capacity must set the same up specially, or the suit will be personal, and not representative; citing *Barnum v. Stone,* 27 Mich. 332.

3. Where a suit is brought in the name of the promisee for the use and benefit of the assignee of a contract, the promisee is the legal plaintiff; citing *Farwell v. Dewey,* 12 Mich. 436.

4. In a suit brought by a plaintiff in a representative character, the declaration must show an indebtedness to the party represented; citing *Barnum v. Stone*, 27 Mich. 332, *Christopher v. Stockholm*, 5 Wend. 38; *Merritt v. Seaman*, 6 N. Y. 173, and cases there cited.

5. The remaining points of counsel are fully stated in the opinion.

*John D. Conely* (*Malcolm P. McGregor*, of counsel), for plaintiffs, contended:

1. Plaintiffs had authority to bring this suit under section 1 of article 9, quoted in the opinion, the word "property," as used in said section, covering the funds in defendant's hands, which belong to the society, and are placed in charge of its trustees; and the fact that the society has acquiesced in this suit, and has sent its permanent secretary to testify on the trial, indicates that in its opinion the trustees are the proper parties to bring this action. The succeeding provisions as to countersigning of checks, etc., are for the purpose of securing proper vouchers of the transactions, and do not apply to actions against an ex-treasurer for funds which he does not hold in his official character, but which he undertakes to keep away from the treasury.

CHAMPLIN, C. J.    The Subsidiary High Court of the United States of the Ancient Order of Foresters is a voluntary association, composed of delegates from district or from subordinate courts, and is organized for the mutual benefit of the members of the order, and for benevolent purposes. It possesses the general legislative power of the order, and is supreme authority for organizing district and subordinate courts. It holds biennial sessions, commencing on the second Tuesday in August. There is an executive council, which is composed of the officers of the subsidiary high court, whose duties and functions are defined by the general laws of the order. Among the officers of the subsidiary high court there is a treasurer and a permanent secretary.

The general laws (art. 9, § 1) provide for the election of three trustees, as follows:

"There shall be three trustees of the subsidiary high

court, who shall be elected at each session thereof, who shall have charge of the property of the court, and in whose names or the name of the subsidiary high court, as provided in section 1, art. 6, the bonds of the treasurer and secretary shall be given. It shall be the duty of the trustees to investigate and ascertain if the sureties on the bonds of the permanent secretary and high court treasurer are responsible for the amount of their bonds; and they shall invest, subject to the approval of the subsidiary high court, the 'surplus funds of the court. No money shall be drawn from the treasurer or bank by the trustees unless by special order of a subsidiary high court meeting or the executive council, duly signed, countersigned, and sealed."

Article 33 of the general laws provides for an endowment fund; section 1 of which reads as follows:

"There shall be, in connection with and under the exclusive jurisdiction of this subsidiary high court, a fund to be known as the 'Ancient Order of Foresters Endowment Fund,' having for its object the payment upon the death of a member thereof a sum not exceeding two thousand dollars to the nominee or nominees, widow, children, other next of kin, or legal representatives of such deceased member as may be entitled thereto: *Provided*, however, that up to the time of the member's death he shall have in all things conformed to the laws, rules, and regulations governing said fund."

This fund is raised by assessments upon the members, which are levied through the executive council, and collected through the special courts, and transmitted by the secretary of each court to the executive council. Section 17 of this article provides:

"All money received for and on behalf of this fund shall be deposited in such bank or banks as may be selected by the executive council and trustees of subsidiary high court in the name of the A. O. F. endowment fund. No drafts or checks upon the same shall be drawn or made except for the purpose of this article specified. Such drafts or checks shall be signed by the H. C. R., H. S. C. R., treasurer, secretary, and trustees of S. H. C., and impressed with the seal of this fund. A copy

of this section, together with the signatures of the afore-mentioned officers and an impression of such seal, shall be delivered by the E. C. to the bank, or banks in which such funds are deposited."

In this section the initials "E. C." stand for "Executive Council;" "S. H. C.," for the "Subsidiary High Court;" "A. O. F.," "Ancient Order of Foresters;" "H. C. R.," "High Chief Ranger;" and "H. S. C. R.," "High Sub-Chief Ranger."

Connected with the endowment fund are the endowment management fund and the reserve fund.

Article 6 prescribes the duties of the permanent secretary, section 1 of which declares that "There shall be a permanent secretary of this S. H. C." Section 2 provides that the permanent secretary shall at each meeting of the executive council transfer all post-office orders, checks, drafts, postage stamps, and cash received on account of the order to the subsidiary high court treasurer, and take his receipt therefor. He is also required to give bonds payable, in case of default, to the trustees or the subsidiary high court. The benefits to be paid from the endowment fund are required to be paid by draft or check, payable to the person or persons legally entitled to receive the same, and forwarded through the court's secretary, who shall, on receipt of the same, notify the trustees, and they, with the secretary, shall visit the person or persons entitled to receive the same, and pay it over, taking proper receipts for the same. Article 33, § 16.

Article 12, § 1, reads as follows:

"The funds of the executive council shall be placed in the hands of the subsidiary high court treasurer, who shall give bonds to the trustees, with two or more sureties, for the faithful performance of his duties, and in such a sum as the council for the time being may require, which shall not be less than $20,000."

Section 2 provides that no money shall be drawn from the subsidiary high court treasurer except by order of the subsidiary high court meeting or the executive council, and by order signed by the subsidiary high chief ranger and at least two trustees, or, in his absence, by the subsidiary high sub-chief ranger and two trustees, and countersigned in either case by the permanent secretary.

Article 33, § 28*a*, provides as follows:

"There shall also be, in connection with this fund, a reserve fund, to which shall be transferred all surplus arising from time to time in the endowment fund, which shall be paid over to the high court trustees every quarter, to be invested by them in government bonds, and shall only be used for the purpose of keeping assessments from occurring oftener than fifteen in any one year."

Section 32 of the same article provides as follows:

"All moneys received by the permanent secretary shall be transmitted to the treasurer within three days, taking his receipt therefor;" and section 33 provides: "The treasurer shall, within three days after the receipt of moneys, deposit the same as per section 17 of this article."

The moneys referred to in this section pertain to the endowment fund, and the other funds attached thereto. Section 22 of the same article provides that all remittances for this fund shall be sent by certified check, post-office order, registered letter, or through an express company to the executive council, payable to the high court treasurer. There are other funds belonging to the subsidiary high court, such as the arbitration fund, sick and funeral fund, and general management fund; but it is not necessary to specify particularly in reference to them, as the custody and disposition of them all has already been referred to.

Plaintiffs in this suit are the trustees of the subsidiary high court, duly elected. One of the trustees elected at

the same time resigned, and his place has not been filled. The defendant was elected treasurer of the subsidiary high court, and as such received into his hands considerable sums of money belonging to each of the funds above mentioned. His term of office expired when his successor was chosen at Chicago, at a regular meeting of the subsidiary high court, held in August, 1887. He gave bond to the trustees, as required by the general law. At that time Ezekiel McMurtry was permanent secretary, and after the Chicago meeting the executive council passed a resolution directing Mr. McMurtry to call upon Mr. Pinney, and request him to pay over the balance of money then in his hands. In pursuance of this resolution McMurtry made the demand, and Mr. Pinney declined to pay over the money demanded, but during the conversation expressed a willingness to pay over a portion,—some $2,250. The balance in his hands, as claimed by them, was something over $4,000, and amounted at the time of the trial, including interest at 6 per cent., to $4,953.78. The plaintiffs thereupon brought this suit to recover this money as the property of the subsidiary high court.

The declaration is upon the common counts in *assumpsit*, and the commencement is as follows:

"On the 1st day of November, A. D. 1888, Patrick Smith and John J. Thomas, trustees, for the use and benefit of the Ancient Order of Foresters, plaintiffs herein, by Conely, Maybury & Lucking, their attorneys, complain of Thomas Pinney, defendant herein, of a plea of trespass on the case upon promises, filing this declaration, entering rule to plead, etc., as commencement of suit."

The promises in the several counts are stated to have been made to plaintiffs. The bill of particulars specifies the items as having been paid to defendant by the former treasurer of the association, as follows:

"The following amounts of money paid to said defendant by James Bretherick, treasurer of the tenth executive council of an organization known as the 'Ancient Order of Foresters,' on or about the 17th day of August, A. D. 1885, for the respective funds of said organization, hereinbelow mentioned:

| | |
|---|---:|
| Endowment fund | $563 21 |
| Endowment management fund | 91 57 |
| Endowment reserve fund | 2,110 00 |
| Arbitration fund | 10 70 |
| Sick and funeral fund | 56 72 |
| General management fund | 13,850 96 |
| Total | $16,683 16 " |

Then follow several amounts claimed to have been paid to defendant by Ezekiel McMurtry, permanent secretary of the Ancient Order of Foresters, on account of the several funds, naming the amounts. The plea in the case was the general issue.

Upon the trial, after the jury were impaneled, and the counsel had made his opening to the jury, wherein he stated that the plaintiffs sought to recover moneys from Mr. Pinney remaining in his hands as ex-treasurer of the subsidiary high court of the executive council of the Ancient Order of Foresters, counsel for defendant interposed an objection to the introduction of any testimony under the pleadings in this case, and based his objections upon the declaration and bill of particulars, the objection being that the plaintiffs were described as trustees, for the use and benefit of the Ancient Order of Foresters, and that those words were merely descriptive of the persons of Patrick Smith and John J. Thomas, and that the suit was therefore in their individual names, to recover money which in their bill of particulars they allege was paid to defendant by other persons. The court overruled the objection, and received the testimony. As this objection lies at the foundation of plaintiffs' right to recover at all, and is one of the main.

grounds relied on by defendant to defeat the action, it should be first considered.

It appeared in evidence that there were in 1889, at the time the suit was brought, some 600 subordinate courts, having a total membership of 60,000 to 65,000 persons. The rule undoubtedly is that the party suing in a representative capacity, where the contract or promise was made to the person he represents, and not to him personally, must set up specially the representative capacity in which he sues. This rule is illustrated by suits brought by executors or administrators and others. If the cause of action accrued or the promise was made to the testator or intestate in his life-time, the executor or administrator must sue as such, and allege the promise to have been made to the person in his life-time whom he represents. If made to him personally after his appointment, although it be a promise to perform some act or pay some debt due to the testator or intestate, the representative may sue individually or in his representative capacity.

In this case the words following the names of the plaintiffs were merely a description of the person, but the objection was one that could have been obviated by amendment by inserting the word "as" before the word "trustees." The declaration would have shown then that the suit was not brought by them in their individual capacity, but in their representative capacity as trustees; and the counts in the declaration might also have been amended to correspond.

Our statute of amendments is very liberal. How. Stat. chap. 264. Such amendments as related to the names of parties have been sanctioned by this Court. *Final v. Backus,* 18 Mich. 218; *Johr v. Supervisors,* 38 Id. 536; *Kimball, etc., Manfg. Co. v. Vroman,* 35 Id. 310; *Merrill v. Kalamazoo,* Id. 211; *McLaughlin v. Wilks,* 42 Id. 553; *Berrien Co. Treasurer v. Bunbury,* 45 Id. 79; *Morford v.*

*Dieffenbacker*, 54 Id. 603; *Cragin v. Gardner*, 64 Id. 402. See, also, where such amendments have been allowed, the following cases: *Bullard v. Bank*, 5 Mass. 99; *Kincaid v. Howe*, 10 Id. 203; *Sherman v. Connecticut River Bridge*, 11 Id. 338; *Blood v. Harrington*, 8 Pick. 552; *Slater v. Nason*, 15 Id. 345; *Wight v. Hale*, 2 Cush. 486; *Crafts v. Sikes*, 4 Gray, 194; *Lester v. Lester*, 8 Id. 437; *Hutchinson v. Tucker*, 124 Mass. 240; *Smith v. Carney*, 127 Id. 179.

Since it was an amendment which might have been made before judgment on motion, this Court will regard it as having been made after judgment, under the authority of section 7636, How. Stat.

The defendant next contends that the plaintiffs are not entitled to recover under the evidence, for the reason that the general laws and rules of the order do not authorize them to institute the suit; that they have shown no authority from the subsidiary high court to bring it. This question depends upon the organization of the association, and the terms and conditions of the agreement by which its members are united. It appears in evidence that the defendant was and still is a member of the association. Unless there is some warrant of authority, no member of number of members of an unincorporated society can maintain a suit for the benefit of the society to enforce a contract made in its name or for its benefit, or recover property belonging to such society; and the question here presented is whether, under the general laws introduced in evidence, the plaintiffs, as trustees for the subsidiary high court, are authorized to maintain this action.

It must be confessed that the general laws are crude and lamentably wanting in matters of detail. The duties of the officers, of the executive council, and of the trustees are prescribed in the most general terms. There

is no provision stating what the outgoing treasurer shall do with the funds on hand, nor to whom he shall hand over the books and papers in his custody. He is not required to deliver them to his successor, nor in express terms that he shall deliver the books and money to the executive council, which is the managing body when the subsidiary high court is not in session. The only ways provided for drawing money from his custody and control are contained in section 2 of article 12, and section 17 of article 33, both of which have been quoted. If the money is in the endowment fund, it is presumably true that it was deposited in some bank specified or selected by the executive council and trustees, in which case it cannot be withdrawn except by drafts or checks upon the same, as provided for in section 17 of article 33. And if it is in such bank, there is no testimony in this case which shows that the proper officers could not have withdrawn the money from such bank. There is no direct testimony in this case that any bank was selected. It may, however, perhaps be inferred from the testimony of Edmund T. Mack, who testifies that he was cashier of the Citizens' Savings Bank of Detroit, and that it paid out for the benefit of the order, at the Chicago meeting, $15,600. The testimony of Mr. Greening is to the effect that when the accounts were audited in the usual way in August, 1887, just previous to the Chicago meeting, the amount then in defendant's hands was $20,499.69. If any money was in the defend-ant's hands, and not in the bank and subject to draft or check, as provided for by section 17 of article 33, then it was subject to be drawn out of defendant's hands by virtue of section 2 of article 12. There is no testimony in this regard showing that the defendant refused to pay any money in his hands, drawn in pursuance of section 2 of article 12. The only evidence that he refused to pay the money pur-

suant to any authority was his refusal to pay Mr. McMurtry, when he called upon him in pursuance of the resolution passed by the executive council; but it does not appear that he was presented with any order signed by the subsidiary high chief ranger and two trustees, or the subsidiary high sub-chief ranger and two trustees, countersigned by the permanent secretary, and, until the proper order is drawn and presented to him, it is difficult to see how he is liable to suit for not paying it over. The trustees themselves have no authority to draw the money from his hands, and the subsidiary high court has not directed this suit to be brought by them to obtain the money from Mr. Pinney in this manner. There is no testimony in the case tending to show any recognized custom with reference to the payment over by the retiring treasurer of the moneys in his hands to his successor in office. The general laws of the order have been introduced as containing the only methods by which the money in his hands as treasurer is withdrawn.

We think it was incumbent upon the plaintiffs to show some breach of duty on the part of defendant prescribed by the general laws of the society of which he was a member, before he can be compelled in a suit of this kind to pay over money in his hands. All the members of the association are bound by these general laws. The executive council cannot draw moneys from his hands simply by resolution. It requires an order, signed as provided for in section 2 of article 12, or by section 17 of article 33.

We think the second objection taken to the recovery in this cause is valid, and that the judgment must be reversed, and a new trial ordered.

The other Justices concurred.