JOHNSON *v.* COUNTY OF MUSKEGON.

1. MUNICIPAL CORPORATIONS—HIGHWAYS AND STREETS—PERSONAL INJURIES—NEGLIGENCE—PLEADING—VARIANCE.

In an action against a county to recover damages for personal injuries claimed to have been due to the maintenance of a temporary way on an incline sloping down from its roadway to a side ditch, where the evidence showed that the cause of the accident was a hole at the bottom of the incline into which a runner of plaintiff's sleigh went, resulting in its turning over, plaintiff could not go to the jury upon a claim of negligence not alleged in his declaration. KUHN, C. J., and BIRD and MOORE, JJ., dissenting.

2. APPEAL AND ERROR — PLEADING — AMENDMENTS — REGARDING AMENDMENT AS MADE.

In an action to recover damages for personal injuries alleged to have been due to certain negligent acts of the defendant, where it appeared from the evidence that such injuries were due to certain other negligent acts of the defendant, and the court instructed the jury that the only negligence to be considered by them was that alleged in the declaration, and a verdict was returned for the defendant, and plaintiff made no motion in the trial court

to amend the declaration, an amendment was not permissible on writ of error under 3 Comp. Laws, § 10273 (3 Comp. Laws 1915, § 12483), providing for amendments to cure omissions, imperfections, variances, and defects not against the right and justice of the matter of the suit and not altering the issue between the parties or the trial.

Error to Muskegon; Sullivan, J. Submitted January 2, 1917. (Docket No. 2.) Decided April 9, 1917.

Case by Charles L. Johnston against the county of Muskegon for personal injuries. Judgment for defendant. Plaintiff brings error. Affirmed.

*R. J. McDonald* (*P. W. Kniskern,* of counsel), for appellant.

*Galpin & Broek,* for appellee.

MOORE, J. (*dissenting*). In January, 1915, the county of Muskegon was engaged in the repair of a highway by covering the center thereof with stone or gravel to a width of nine or ten feet. At the time in question, a large number of teams were hauling stone or gravel and dumping it in the old traveled portion of the roadway. From the center of the highway to the outer edge of the grade there was a slope of about three feet. The plaintiff was drawing a load of hay, and because of the gravel he was obliged to travel north and outside of it. He was told by a man at work on the road that it was passable. Shortly after this, his load of hay was capsized and he was hurt. It is for these injuries this suit was brought.

Among the averments in the declaration are the following:

First count: "And it was the duty then and there of said defendant to keep said highway in said township and county in reasonable repair and in a condition reasonably safe and fit for public travel so that the said plaintiff and others might pass and repass,

ride or drive with teams and vehicles, over said highway with safety while in the exercise of due care."

Second count: "The highest part of the highway and parallel ditches so-called were scraped out and dug out on each side of said roadway and distant from said roadway of said highway, to wit, 20 feet for each side thereof; that the highway from about the outer edge of said roadway and on each side thereof sloped down until the bottom of said parallel ditches on each side thereof were, to wit, 5 feet lower than the said roadway."

The further count alleged the manner in which the roadway had been built; that it was being repaired and the manner of repair; that it was the duty of the defendant to keep said highway in a condition reasonably safe and fit for travel so that the plaintiff might ride or travel with team and vehicle over said highway with safety while exercising due care.

"That said plaintiff arriving at the point or place aforesaid on said highway where the same had become out of repair, obstructed, and rendered impassable by reason of piles of gravel, soil, and broken stone deposited thereon as hereinbefore described, and where the said highway was not kept in a reasonably safe and fit condition for public travel, and while the said plaintiff was in the exercise of due care, the said plaintiff, in order to pursue his way, was compelled to turn to the north side thereof into the ditch thereof, to continue on his way, and thereupon his sleigh was upset, and he, the said plaintiff, was thrown off said load of hay upon the ground, and by such fall, and by reason of his being thrown off said load of hay, the said plaintiff's right collar bone was broken, and the right point of his right shoulder broken, all without any fault or negligence on the part of said plaintiff; which wrongs and injuries the said plaintiff suffered by means and in consequence of the failure and negligence of the said defendant."

The plea was simply the general issue. The testimony of the plaintiff as to how the accident occurred is in part:

"I came along very nicely until I got to this place where they were spreading gravel in the center of the road. When I came to this gravel, I saw I had to go on one side of the road and getting along the best way I could in order to get over the place. There were some gentlemen working there spreading the gravel, and the work was going on in that condition. I uncovered myself from the blankets, got up on my load on my feet, and I drove perhaps 20 rods. I was out of the center of the road, down on the side or slope, and perhaps during that 20 rods one runner was 6 inches, and maybe at times 8 inches, higher than the other runners all the way on that sidling slope until I come to this sidling place where some others had trouble undoubtedly, and the road was scooped off still further, and when I come there my load suddenly shot sideways, and that throwed me from my balance, and I landed on my head and shoulders on the gravel that they had been spreading, that had been spread two or three days before. That is where I received the injury. * * * At the time of the accident, I stood on the south side of the load so as to balance it the best I could, taking careful pains to take care of my load and myself. I had a good team that would mind, and I could make them go just as slow as any man would want a team to go. I was driving on a slow walk and tending to my team. The road was cut up more or less. The road was like any other sidling snow track or road would be, full of slews and sidling all the way. The condition of the road at that place was the same as it was before, only there was slew there and a little deeper on that side, so that when I went into that it suddenly threw my feet from under me, and my load went one way and I the other. * * * The exact condition of the road at the place where this accident occurred was very sidling, and right at that spot there was a hole where one runner went in. Perhaps it was a foot or more than a foot lower than where the other runner was, and it tipped me over just as quick as that (snapping fingers). My load was as nice as any load of hay I ever rode until I turned into the ditch."

When the testimony was all in, defendant asked for a directed verdict. The trial judge was of the opinion

that defendant might have closed the road entirely during the time of the repairs, but, as this had not been done, the road should have been kept in a condition reasonably safe and fit for travel and submitted the case to the jury. A verdict was returned in favor of the defendant. The case is brought here by writ of error.

The important one relates to those portions of the charge reading as follows:

"There is nothing said in the declaration about the slewing of sleighs on the road left open that made the road dangerous, nor is there anything said in the declaration about a sudden drop or hole in the incline that made the road dangerous, and so the defendant cannot be held for these defects in the road, because these defects are not alleged in the declaration. That is the law of the case; I so charge you. The sole defect alleged is the general incline to the north upon the traveled portion in the center of the road, and the sole question of negligence is: Was that decline of itself so dangerous as to render the road unsafe and unfit for public travel? I have charged you very carefully upon this particular part which it is alleged was the negligence of the defendant, and it is your duty to follow the law of the case and to follow the evidence so as to determine whether there was any negligence on the part of the defendant, in view of what the court has said to you, to cut out from your consideration all other things in relation to the law of this case as to the negligence of the defendant, the county, except what I have charged you in relation to what is the negligence charged and the negligence which must be proven. * * *

"I have already stated to you that there is no negligence alleged as to any sudden drop in the incline. That you don't consider. I have already stated to you that the plaintiff cannot recover because of any slews or working down of the snow, because that is not alleged, but it is on the general incline, and was this accident a direct—or sprung directly from the cause of negligence alleged, was the negligence the direct and proximate cause of the injury? * * *

"I have called your attention, and call it to you again, that the negligence alleged was simply the incline there, the general incline there, and because of that incline that it was the duty of the officers of this county who had that road in charge not to allow teams to pass thereon. That is the sole claim that is made."

We have quoted some of the averments of the declaration. It has already appeared that the plea was the general issue. The testimony as to what occasioned the accident was received without any claim that the declaration was not sufficient.

Now counsel for appellee say, we quote from the brief:

"We submit at the outset that a careful reading of the record in this case will show to the court that no error could have been committed in the charge of the court, for the reason that a verdict should have been directed for the defendant.

"The testimony of the plaintiff and his witnesses show that outside of the condition caused by the snow the road was in a condition reasonably safe for public travel."

We think this claim overlooks the fact that the travel on the side of the road was made necessary by the work that was then in progress. It also overlooks the fact that officers supervising the work recognized the necessity of looking after the changed conditions, and say they employed a man to at once repair the holes which came because of the changed conditions. The man so employed testified that he looked after the filling of these holes. Plaintiff gave testimony denying that the holes had been filled. We think the trial judge was right in saying there was a case for the jury, and was wrong in narrowing the issue presented by those portions of the charge which we have quoted.

Judgment should be reversed, and a new trial ordered, with costs to the plaintiff.

Kuhn, C. J., and Bird, J., concurred with Moore, J.

FELLOWS, J.  I am unable to agree with Mr. Justice
MOORE that the trial court was in error in charging
the jury that the only negligence alleged in the decla-
ration, for which defendant would be liable, was that
which grew out of the maintenance of the temporary
way on an incline sloping down from the roadway to
the ditch on the side.  This, as I read this declaration,
is the only negligence alleged.  There is no allegation
that the temporary way on this incline was out of re-
pair by reason of holes, or sudden drops.  The plaintiff
in his testimony says:

"*   *   *   The exact condition of the road at the
place where this accident occurred was very sidling,
and right at that spot there was a hole where one
runner went in.  Perhaps it was a foot or more than
a foot lower than where the runner was, and it tipped
me over just as quick as that (snapping fingers).
*   *   *"

The existence of the incline or slope was alleged;
the existence of the hole that the runner of plaintiff's
sleigh dropped into was not.

The plaintiff, to reverse this judgment, must affirm-
atively show error; and, to do so, I think must show
by the record, not only that he has proven, but has
alleged, actionable negligence on the part of the de-
fendant which the court declined to submit to the jury.
The fact that in making his proof, as to how the acci-
dent occurred, he gave evidence tending to show negli-
gence other than that alleged in the declaration, does
not broaden the allegations therein contained, particu-
larly when to so broaden them would work a reversal
of the case.  It must be borne in mind that the question
here submitted is not whether the defendant, on the
state of the record, could obtain a reversal of a judg-
ment in favor of the plaintiff if the court had sub-
mitted to the jury the question of negligence other
than that alleged in the declaration.  The defendant
might be estopped by the record made in the court

below from claiming here that a ruling of the trial court, which he had there acquiesced in, was erroneous. Such is not the question submitted to us. Here the plaintiff is seeking a reversal because the court failed to submit to the jury negligence not alleged in the declaration.

The holdings of this court have been uniform that, while the plaintiff is not required to set out the evidence in his declaration, he is required to inform the court and the defendant by his pleadings what his cause of action is, and particularly in negligence cases to allege wherein he claims the defendant was negligent. A few of these cases will illustrate the rule.

It was said by Mr. Justice GRAVES, in the case of *Marquette, etc., R. Co.* v. *Marcott,* 41 Mich. 433 (2 N. W. 795):

"Reason and good sense as well as law compel the plaintiff by his declaration in these cases to inform the defendant and the tribunal what the complaint is, and he must not only show that the defendant has been negligent, but must further show in what respect. The matters of negligence to which the injurious consequence is referred must be properly averred."

Mr. Justice DURAND, speaking for the court, said in *Reed* v. *Gould,* 93 Mich. 359 (53 N. W. 356):

"If a party is legally entitled to recover for an alleged wrong, it must be in a proceeding reasonably adapted to the purpose, or upon pleadings framed in such a manner as to warrant the particular remedy sought for; and a cause should not be submitted to a jury upon a theory not germane to the pleadings, or merely on account of certain equitable considerations which the trial may have disclosed, but which a party can only obtain in such a proceeding or upon such pleadings as fairly, logically, and legally furnish the court with a basis upon which to grant the remedy which it is called upon to give."

In *Schindler* v. *Railway Co.,* 77 Mich. 136 (43 N. W. 911), Mr. Justice CAMPBELL said:

"The decisions of this court have been uniform that no proof of negligence can be received, beyond what is alleged, and that allegations of the wrong are necessary."

Mr. Justice HOOKER said, in *O'Neil* v. *Railway Co.*, 101 Mich. 437 (59 N. W. 836) :

"It is true, as contended by counsel, that a declaration is not required to set up the evidence by which the cause of action is to be proved, but an action upon the case does require a specific and unequivocal statement of the essential facts constituting the cause of action."

The case of *Pennington* v. *Railway Co.*, 90 Mich. 505 (51 N. W. 634), is quite in point. There the court directed a verdict for the defendant on his own motion; there was a variance between the declaration and the proofs but the record did not disclose that the defendant made this point, or requested a directed verdict. The question was held, however, by a majority of this court to be available here.

The plaintiff, in the instant case, did not have a legal right to go to the jury upon a claim of negligence not alleged in his declaration; if no legal right was denied him in the court below, he is not entitled to a reversal here.

Counsel for the plaintiff most strenuously urges that the benefit of the statute of amendments be applied in this case. He says:

"Thus we see, by reference to the statute, that had the plaintiff been successful in this cause and obtained judgment, and the declaration was faulty as claimed by the court, it was the duty of the court of his own motion, by reason of the proofs produced, to have amended the declaration, and thus supported the judgment. It surely cannot be alleged that the rule would be different and the rights of the parties would be less when the plaintiff did not prevail in his contention because of the striking out of his evidence of the main facts of the case by the court."

With counsel's premise I agree; from his conclusion I differ. This statute should be applied to save a judgment, but not to work a reversal. The statute (section 10273, 3 Comp. Laws; section 12974, 5 How. Stat. [2d Ed.], 3 Comp. Laws 1915, § 12483) provides:

"The omissions, imperfections, variances and defects in the preceding sections of this chapter enumerated, and all others, of the like nature, not being against the right and justice of the matter of the suit, and not altering the issue between the parties, or the trial, shall be supplied and amended by the court where the judgment shall be given, or by the court into which such judgment shall be removed by writ of error."

This statute has been frequently invoked in this court to prevent mistrials, and on numerous occasions it has been held that, inasmuch as the amendment might have been made in the court below, this court would make the amendment here on its own motion. Cases illustrative of this are: *Smith* v. *Pinney*, 86 Mich. 484 (49 N. W. 305); *Enright* v. *Insurance Co.*, 91 Mich. 238 (51 N. W. 928); *Johnston* v. *Insurance Co.*, 106 Mich. 96 (64 N. W. 5). But this is done to work an affirmance, not a reversal; to cure an error, not to create one. 31 Cyc. p. 404; *White River Bank* v. *Downer*, 29 Vt. 332. The question here is whether the statute of amendments should be invoked by this court to defeat a judgment valid in all regards, but rendered invalid by making the amendment. I think not.

It was said in *Williams & Hall* v. *Birch*, 6 Bosw. (N. Y.) 674:

"We are not aware of any decisions which hold it a proper exercise of discretion, or that the court has the power to so amend the pleadings, after a trial and a review at the general term of exceptions there taken, as to convert, merely by force of such amendment, a correct decision into an erroneous one, and an irreversible into a reversible judgment."

The supreme court of Iowa, in the case of *Thyssen* v. *Storage Co.*, 134 Iowa, 749 (112 N. W. 177, 13 L. R. A. [N. S.] 572), holds:

"As plaintiff had chosen his ground, proceeded to trial, and submitted his case on the claim as stated in the original petition, we think he cannot be permitted to mend his hold after a verdict has been returned against him, and demand a new trial on another and materially different theory."

The question was passed upon in *Dunham* v. *Brown*, 9 Kan. App. 889 (58 Pac. 232), and it was said by the Kansas court:

"It is contended by counsel for plaintiffs in error that the evidence shows a waiver on the part of the defendants of the right to plead failure of consideration for the note. The alleged waiver was not pleaded in the replies filed to the answers of the defendants, and no request for leave to amend the replies was made until after the motion for a new trial was overruled. The request came too late. An examination of a large number of decisions of the Supreme Court construing section 139 of the Civil Code, which provides that any pleading may be amended before or after judgment to conform the same to facts proven, when such amendment does not change substantially the claim or defense, leads us to conclude that such amendments are permissible only to uphold verdicts and judgments, and not to overthrow them."

*McKernan* v. *Railway Co.*, 138 Mich. 519 (101 N. W. 812, 68 L. R. A. 347), is not out of accord with these cases. There no question was made as to the sufficiency of the pleadings to cover the case made so far as the opinion shows, either by court or counsel, and this court did not permit the amendment here, but, reversing the case upon other grounds, contented itself with saying:

"We cannot assume that, had such a point been made, the circuit judge would have refused an amendment."

In the instant case, the question was raised in the court below, not by the defendant it is true, but by the court, and plaintiff's attention was challenged to it by the charge of the court; he made no request for permission to amend, although the trial court in his discretion could have allowed the amendment after instructions to the jury (*Prater* v. *Miller*, 25 Ala. 320 [60 Am. Dec. 521]), and, had he allowed such amendment, would, no doubt, then have submitted the case as made by the amendment to the jury. The formal amendments to the declaration need not have been filed instanter, but might be filed within a reasonable time after verdict. *Harris* v. *Thomas*, 140 Mich. 462 (103 N. W. 863).

Permission to amend was not asked for, plaintiff's requests were general in their terms and did not point out the specific negligence here urged, nor, so far as the record discloses, was the court advised that plaintiff made any claim, other than that stated by the court in his charge, nor was any claim made that the declaration was broad enough to permit recovery, except upon the theory submitted to the jury.

I think the trial court correctly construed the declaration, and that we should not, either upon our own motion or at plaintiff's request, so amend the declaration as to create error and then reverse the case for such error. I do not think the other assignments of error are well taken. In my judgment the case should be affirmed.

STONE, OSTRANDER, STEERE, and BROOKE, JJ., concurred with FELLOWS, J.